1   EVAN R. MOSES, CA Bar No. 198099
    evan.moses@ogletree.com
2   AARON H. COLE, CA Bar No. 236655
    aaron.cole@ogletree.com
3   MELIS ATALAY, CA Bar No. 301373
    melis.atalay@ogletree.com
4   OMAR M. ANIFF, CA Bar No. 315446
    omar.aniff@ogletreedeakins.com
5   OGLETREE, DEAKINS, NASH, SMOAK &
    STEWART, P.C.
6   400 South Hope Street, Suite 1200
    Los Angeles, CA  90071
7   Telephone:    213-239-9800
    Facsimile:    213-239-9045
8
    Attorneys for Defendants
9   HOME DEPOT U.S.A., INC.

10                  **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12

13  KENNETH CHIARITO, individually, and on      Case No. 22-1796
    behalf of other members of the general public
14  similarly situated, and as an aggrieved      **DEFENDANT'S NOTICE OF REMOVAL**
    employee pursuant to the Private Attorneys   **OF CIVIL ACTION TO FEDERAL COURT**
15  General Act ("PAGA"),                        **PURSUANT TO 28 U.S.C. §§ 1332, 1441,**
                                                 **1446 AND 1453**
16                  Plaintiff,
                                                 [Filed concurrently with Civil Cover Sheet;
17          v.                                   Certification of Interested Parties and Disclosure
                                                 Statement; Notice of Pendency of Other Cases;
18  HOME DEPOT U.S.A., INC., a Delaware          Declarations of Andrew Felt, G. Edward
    corporation; and Does 1 through 10, inclusive, Anderson, Ph.D., and Omar M. Aniff in Support
19                                               of Removal]
                    Defendants.
20
                                                 Complaint Filed:  February 15, 2022
21                                               Trial Date:       None

22

23

24

25

26

27

28
                                                 Case No. 22-17961

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF KENNETH CHIARITO AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Home Depot U.S.A., Inc. ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of such removal, Defendant states as follows:

**I.      THE STATE COURT ACTION**

1.      On February 15, 2022, plaintiff Kenneth Chiarito ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Santa Clara, entitled *KENNETH CHIARITO, individually, and on behalf of other members of the general public similarly situated, Plaintiff, v. HOME DEPOT U.S.A., INC., a Delaware corporation; and does 1 through 10, inclusive, Defendants,* which was assigned case number 22CV394402 (the "State Court Action"). The Complaint asserts claims for: (1) Unpaid Overtime Wages in violation of California Labor Code §§ 510, 1198, and the Wage Orders; (2) Unpaid Minimum Wages in violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, 1198, and the Wage Orders; (3) Meal Period Violations pursuant to California Labor Code §§ 226.7, 512(a), 516, 1198, and the Wage Orders; (4) Rest Period Violations pursuant to California Labor Code §§ 226.7, 516, 1198, and the Wage Orders; (5) Non-Compliant Wage Statements And Failure To Maintain Accurate Payroll Records in violation of California Labor Code §§ 226(a), 1174(d), 1198 and the Wage Orders; (6) Failure to Timely Pay Wages During Employment in violation of California Labor Code § 204; (7) Unreimbursed Business-Related Expenses in violation of California Labor Code § 2802 and Wage Order No. 7-2001; (8) Civil Penalties Pursuant to the Private Attorneys General Act ("PAGA"), California Labor Code § 2698 et seq.; (9) Unlawful Business Practices in Violation of Business and Professions Code Section 17200, et seq.; and (10) Unfair Business Practices in Violation of Business and Professions Code Section 17200, et seq.

2.      On February 17, 2022, Plaintiff personally served the State Court Action complaint

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

on Defendant's agent for service of process, as well as other documents filed in the State Court Action.  Declaration of Omar M. Aniff ("Aniff Decl.") ¶ 2.  A true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal.

3.      As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in this action.  True and correct copies of these documents are attached as **Exhibit B** to this Notice of Removal.  Defendant has not been served with any pleadings, process, or orders besides those attached.  Aniff Decl., ¶ 3.

4.      Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

5.      <u>This Notice is Timely</u>.  This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within 30 days of Complaint's service upon Defendant.  28 U.S.C. § 1446(b).

## II.    <u>JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

6.      This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A.    <u>The Size of the Putative Class Exceeds 100</u>

7.      In the Complaint, Plaintiff defines the proposed class as: "All persons who worked for Defendants at a retail store location or distribution center as non-exempt, hourly paid employees in California, and who have been required to perform self-health screenings, at any time from March 1, 2020, until the date of trial".  Ex. A, ¶ 45.

8.      Defendant's employment records show that there are tens of thousands of current and former employees who fall within Plaintiff's proposed class.  From March 1, 2020 to August 22, 2020, Home Depot employed at least 43,000 non-exempt hourly employees in a California retail store or distribution center location.  Declaration of G. Edward Anderson ("Anderson Decl.") ¶¶ 5-

6.

**B.    The Parties Are Diverse**

9.    Citizenship of Defendant.    Pursuant to 28 United States Code § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  *Id*. at 1184.  The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination."  *Id*.

10.    At all times on or after the date this action was filed, defendant Home Depot U.S.A., Inc. has been a citizen of the states of Delaware and Georgia.  Defendant has its principal place of business in Atlanta, Georgia, as that is the location of its headquarters and where it centrally manages its executive and administrative operations.  Declaration of Andrew Felt ("Felt Decl.") ¶ 4.  In addition, Defendant is incorporated in the State of Delaware.  *Id*. at ¶ 3.  Defendant is neither incorporated in California, nor does it have a principal place of business in California.  *Id*. at ¶¶ 3-4.  Accordingly, for purposes of determining diversity, Defendant is regarded as a citizen of Georgia and Delaware, and not a citizen of California.  *See also Ottaviano v. Home Depot [U.S.A.], Inc.[]*, 701 F. Supp. 2d 1005, 1007 (N.D. Ill. 2010) (Home Depot "is a Delaware corporation with its principal executive offices located in Atlanta, Georgia"); *Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106, 108 (D.N.J. 2009) (Home Depot "is a Delaware corporation with its principal offices located in Georgia").

11.    Citizenship of Plaintiff.  Plaintiff is a citizen of the State of California.

12.    Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met because Defendant is a citizen of Georgia and Delaware while Plaintiff, a putative class member, is a citizen of California.

**C.    The Amount in Controversy Exceeds An Aggregate of $5,000,000**

13.    Plaintiff has not alleged a specific amount in controversy in the Complaint.  In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

14.    In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

15.    While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

16.    As described further below, as well as in the concurrently filed declaration from Anne

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

Budniewski,[1] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

### 1. **Defendant's Estimate of the Amount in Controversy.**

17.     In determining the amount in controversy to support its Notice of Removal, Defendant relies on a conservative estimate based only on damages sought by Plaintiff in his Complaint as a result of the alleged: (1) unpaid minimum wages due to the performance of self-health screenings before each shift; (2) failure to provide accurate wage statements; and (3) failure to timely pay all wages during employment.  Because the amounts in controversy for these three claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional estimates of the amounts placed in controversy by Plaintiff's other allegations in the Complaint, including potential damages sought for the allegations of: (1) unpaid overtime wages; (2) failure to provide meal periods; (3) failure to authorize and permit rest periods; (4) failure to pay maintain accurate payroll records; (5) unreimbursed business expenses; (6) civil penalties pursuant to California's Private Attorneys General Act; (7) unfair, unlawful, and harmful business practices; and (8) Plaintiff's request for attorney's fees in connection with claims.  *See* Ex. A, Prayer For Relief ¶¶ 8, 13, 21, 28, 34, 40, 46, 50, 56, 61 (seeking attorney's fees); *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes).  That said, Defendant reserves the right to do so in opposition to any remand motion.

---

[1] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

18.     Defendant has also based its removal calculations on the fewest number of California non-exempt retail and distribution center employees who worked at any one time during just a portion of the putative class period, rather than the broader class proposed by Plaintiff.  If necessary, Defendant could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint.

### a.     <u>The Amount Placed in Controversy by the Minimum Wage Claim</u>

1.     In his Second Cause of Action, Plaintiff alleges that Defendant "failed to pay Plaintiff and class members minimum wages".  Ex. A, ¶ 64.

2.     Plaintiff specifically alleges that Defendant failed to properly compensate Plaintiff and the putative class members as follows:

> Defendants have impeded Plaintiff and class members from recording hours worked that are outside their scheduled shift. During the relevant time period, Defendants have implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and class members perform self-health screenings before entering Defendant's stores and distribution centers to start their shifts. As stated, Defendants issued disposable plastic thermometers to Plaintiff and class members and instructed them to perform self-temperature checks before their scheduled shifts, as well as complete online health screening questionnaires. Defendants also have required Plaintiff and class members to wait in line and have their temperatures taken upon arriving at work, prior to being permitted to clock in.
>
> Plaintiff and class members are following Defendants' instructions and completing the required self-health screenings before being permitted to clock in for their shifts. Even though Defendants are requiring mandatory self-health screenings, Defendants have not provided Plaintiff and class members a mechanism to include this time worked on their time records. To the extent that Defendants credited Plaintiff and class members for the time spent performing the health screenings, the amount credited was insufficient to cover the full time spent by Plaintiff and the class members on the screenings. Thus, Defendants have suffered and/or permitted Plaintiff and class members to perform work for which they are not paid.
>
> *Id.* at ¶¶ 65-66.

Thus, Plaintiff alleges that Defendant failed to compensate Plaintiff and putative class members for time allegedly worked before each and every shift.

19.     Labor Code Section 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal

DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

20.    Based on Defendant's records, the fewest number of current and former non-exempt employees who worked either in a retail location or distribution center in California from March 1, 2020 to August 22, 2020 (the "putative class members") is 43,000. [2]  Anderson Decl., ¶ 6.  The hourly rate of the putative class members was at least $13.00 per hour during this period.  *Id.* at ¶ 8.

21.    Based on the above facts and allegations contained in Plaintiff's Complaint, Defendant's calculation of Plaintiff's claims for unpaid minimum wages is **$224,047.20**. ($13 x 0.0167 x 1,032,000).  The computation of the amount in controversy is based on a conservative calculation that the minimum **43,000** putative class members worked at least **1,032,000** weeks during March 1, 2020 to August 22, 2020 (the "Applicable Period"), that each putative class member earned a regular rate of no less than $**13.00** per hour, and that each putative class member incurred one (1) minute of unpaid minimum wage for every week of work.  Anderson Decl., ¶¶ 6-8.

22.    The assumption of one minute of unpaid minimum wages per week is conservative.  Indeed, an estimate of one hour of unpaid wages for every week of work has been accepted by the federal courts as a reasonable and conservative figure when computing the minimum wage amount in controversy for purposes of removal.  *See Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (same).  This is

---

[2]  Defendant employed tens of thousands of non-exempt employees in a California retail location or distribution center during the putative class period.  Nonetheless, for the purposes of its amount in controversy calculations, Defendant conservatively uses 43,000, which is the fewest number of putative class members employed during the Applicable Period, which comprises just five months of the alleged four-year putative class period.

especially the case where, as here, a plaintiff fails to provide specific allegations concerning the amount of or frequency with which he worked unpaid hours without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

23.   Consequently, the amount placed in controversy by the Minimum Wage Claim is at least **$224,047**.

**b.   The Amount Placed in Controversy by the Failure to Provide Accurate Wage Statements**

24.   In his Fifth Cause of Action, Plaintiff alleges that "[a]t all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members[3] with uniform, incomplete, and inaccurate wage statements". Ex. A. ¶ 87.

25.   Plaintiff further alleges the following:

> Because Defendants did not record the time Plaintiff and Subclass members spent working off the clock, Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with section 226(a)(1) and 226(a)(5). For the same reason, Defendants failed to accurately list the total number of hours worked by Plaintiff and Subclass members in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and corresponding number of accurate number of work hours worked at least hourly rate in violation of section 226(a)(9).

Ex. A, ¶ 88.

26.   Plaintiff asserts that as a result of Defendant's alleged intentional failure to provide wage statements in compliance with California law, Plaintiff and the Subclass members are entitled to "statutory penalties pursuant to California Labor Code section 226(e)". Ex. A., Prayer for Relief ¶ 34.

27.   In turn, Labor Code section 226(e) allows a plaintiff to seek penalties of: $50 per employee for the initial pay period in which a section 226(a) violation occurs; and $100 per employee

---

[3] Plaintiff defines "Subclass Members" as putative class members who received at least one wage statement at any time from one year prior to the filing of the initial complaint until the date of trial, *i.e.*, from February 15, 2021 to the present. Ex. A. ¶ 46. During the five-month period from February 15, 2021 to August 15, 2021, Defendant employed and issued wage statements to at least 43,000 non-exempt employees in a California retail location or distribution center. Anderson Decl., ¶ 9.

for each subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee.  Cal. Labor Code § 226(e)(1).

28.     Defendant's calculation of Plaintiff's claim for non-compliant wage statements is **$2,150,000** (43,000 x 1 x $50).  The computation of the amount in controversy is based on a conservative calculation that the minimum 43,000 wage statement sub-class members received just **one** inaccurate pay check during the period from February 15, 2021 to August 15, 2021.  Anderson Decl., ¶ 9.

29.     An estimate of one wage statement violation is exceptionally reasonable and conservative given the allegations contained in Plaintiff's Complaint.  The Complaint contends that Defendant required Plaintiff and putative class members to perform self-health assessments before every shift, that the time spent performing the checks is compensable, and that Defendant failed to pay for this time.  *See* Ex. A, ¶¶ 64-65.  Thus, the Complaint alleges that Defendant did not properly compensate Plaintiff and the putative class members for each day they worked during the relevant time period.  Under Plaintiff's theory, this would render each and every wage statement issued during the time period "inaccurate".  Ex. A, ¶¶ 86-87.

30.     In *Altamirano v. Shaw Industies, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013), the district court held that it was "reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods.  2013 WL 2950600, at *11.

31.     Here, given Plaintiff's allegations that the putative class members were not properly compensated on a *daily* basis, Plaintiff claims that each putative class members suffered at least one violation during any given pay period.  Thus, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action."  *Altamirano*, 2013 WL 2950600, at *11.  Nonetheless, Defendant has assumed **only one wage statement violation for each of the at a minimum 43,000 wage statement sub-class members from February 15, 2021 to August 15, 2021.**

32.    Consequently, the amount placed in controversy by the Wage Statement Claim is at least **$2,150,000.00**.

### c.    The Amount Placed in Controversy by the Failure to Timely Pay Wages During Employment

33.    In his Sixth Cause of Action, Plaintiff alleges that Defendant violated California Labor Code section 204 by failing to timely pay putative class members all wages due during employment. Ex. A, ¶¶ 98-99.

34.    Plaintiff further alleges the following:

> This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages that were not timely paid to Plaintiff and those class members by Defendants during their employment.
>
> …
>
> During the relevant time period, Defendants willfully failed to pay Plaintiff and class members all wages due, including but not limited to, the overtime wages, minimum wages, and/or meal and rest period premiums, within the time periods specified by California Labor Code section 204.

> Ex. A, ¶¶ 94, 98.

35.    Plaintiff asserts that as a result of Defendant's allegedly willful failure to pay all wages due within the time periods specified by California Labor Code section 204, he and the putative class are entitled to recover statutory penalties pursuant to California Labor Code Section 210. Ex. A, ¶ 99.

36.    In turn, Section 210 sets forth penalties for Section 204 violations as follows: $100 per employee for each initial violations; and $200 per employee "for each subsequent violation, or any willful or intentional violation, plus 25 percent of the amount unlawfully withheld". Cal. Labor Code § 210(a)(1)-(2).

37.    Defendant's calculation of Plaintiff's claim for failure to timely pay wages during employment is **$4,300,000** (43,000 x $100 x 1). The computation of the amount in controversy is based on a conservative calculation that Defendant failed to timely pay wages to the **43,000** putative class members during just **one** pay period during the Applicable Period. Anderson Decl., ¶ 5.

38.    As with the alleged wage statement violations, an assumed single failure to timely

pay wages during the Applicable Period is conservative.  The Complaint contends Defendant's failure to timely pay all wages is derivative of Defendant's purported failure to pay for self-health assessments, which occurred before *every* shift.  Ex. A, ¶¶ 64-65, 94.  Therefore, according to Plaintiff's theory, Defendant allegedly failed to timely pay putative class members all wages due for each pay period during the entire Applicable Period.  Further, the calculation does not factor in Plaintiff's allegations of a "willful" violation of Labor Code Section 204, which makes available "two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld".  Ex. A, ¶ 98; Cal. Labor Code § 210(a)(2).  Instead, Defendant has assumed just one such unintentional/non-willful violation per putative class member during the entire Applicable Period.

39.    Consequently, the amount placed in controversy by the Failure to Timely Pay All Wages Claim is at least $**4,300,000**.

**d.    Summary of Defendant's Calculations**

40.    As described above, a reasonable and conservative estimate of the amount in controversy presented by Plaintiff's minimum wage, wage statement, and failure to timely pay wages claims exceed $5,000,000.  Indeed, these three claims alone have placed at least $7,230,797.00 in controversy, as follows:

| Claim | Estimated Exposure |
|---|---|
| Minimum Wage Claim | $224,047 |
| Wage Statement Claim | $2,150,000 |
| Failure to Timely Pay All Wages Claim | $4,300,000 |
| **TOTAL** | **$6,674,047** |

Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## III.    DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

41.    <u>Venue is Proper</u>.  In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Superior Court of the State of California for the County of Santa Clara is located within the Northern District of California.  Therefore, venue is

1    proper in this Court because it is the "district and division embracing the place where such action is

2    pending." 28 U.S.C. § 1441(a).

3        42.    In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders

4    served upon Defendant are attached as Exhibits to this Notice.

5        43.    In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon

6    counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for

7    the County of Santa Clara.  Notice of compliance shall be filed promptly afterward with this Court.

8        44.    As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently filed its

9    Certificate of Interested Parties and Disclosure Statement.

10        45.    Finally, in the event this Court has any question regarding the propriety of this Notice

11    of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may

12    have an opportunity to more fully brief the basis for this removal.

13        WHEREFORE, Defendant removes the above-captioned action to the United States District

14    Court for the Northern District of California.

15    DATED:  March 21, 2022                    OGLETREE, DEAKINS, NASH, SMOAK &
                                                STEWART, P.C.
16

17

18                                             By:  /s/ Evan R. Moses
                                                    Evan R. Moses
19                                                  Aaron H. Cole
                                                    Melis Atalay
20                                                  Omar M. Aniff

21                                             Attorneys for Defendants
                                               HOME DEPOT U.S.A., INC.
22

23

24

25

26

27

28

12                                Case No. 22-179613
DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT